[L. A. No. 2325. Department Two.—March 19, 1910.]

## CHARLES W. PAULY, Appellant, v. THOMAS W. BROADNAX et al., Respondents.

EJECTMENT—BOUNDARY OF GOVERNMENT SURVEY—LOCATION OF PROPERTY.—CONFLICTING EVIDENCE—VERDICT SUSTAINED.—In an action of ejectment involving the disputed boundary of the government.

survey of a thirty-sixth section, it being conceded that plaintiff is
entitled to the north half thereof, which he claims includes part of
the land of defendants, which the latter claim to be situated wholly
outside of such north half and to extend outside of the section line,
where there is a substantial conflict of evidence both as to the au-
thenticity of alleged monuments and the courses and distances in-
volved in locating such boundary, and there was ample testimony, if
believed, to justify the jurors in finding in favor of the defendants,
and the court in denying the motion for a new trial, the verdict will
not be disturbed upon appeal.

ID.—EVIDENCE—LOOSE STAKE NOT INVOLVED.—The court properly ex-
cluded evidence of a loose stake found by a witness for plaintiff
miles away from the land and boundary in dispute.

ID.—DIAGRAM BY GOVERNMENT SURVEYOR—LOCATION OF STANDARD PAR-
ALLEL—ILLUSTRATION OF EVIDENCE.—Where a surveyor employed by
the federal government was instructed to determine the location of
township lines, and of the standard parallel which formed the south
boundary of the township and section thirty-six involved, testified
that said parallel crossed the land of defendants and showed that no
part of their land was in the north half of the section, a diagram of
the standard parallel fixed by him was properly admitted to illus-
trate his evidence, but not as proof of the location of the standard
parallel.

ID.—INSTRUCTION AS TO DIAGRAMS.—The court properly instructed the
jury that all of the diagrams to illustrate the evidence of surveyors
who testified, could have no effect as evidence of the location of any
boundary upon the ground.

ID.—INSTRUCTION AS TO DEFENDANTS' LAND AND IMPROVEMENTS.—Where
plaintiff had testified as to rental value of the land and improve-
ments of defendants, an instruction relative to said land and im-
provements, stating the claim of defendants as to the location
thereof, and also as to plaintiff's right to be protected in his suit,.
could not have prejudiced the plaintiff.

ID.—INSTRUCTION AS TO STAKES AND MONUMENTS CLAIMED BY PLAINTIFF
—BURDEN OF PROOF—IMPORT.—An instruction imposing upon plain-
tiff the burden of proof to show by a preponderance of evidence that
stakes or monuments claimed by plaintiff to fix the boundaries of the
land in question "are those of the original, official government survey,
and also, that such original stakes or monuments establish and locate
particular and designated boundaries, section or quarter section
corner of such original survey," and that if such burden of proof is
not sustained, "they should be disregarded by you as evidence," read
as a whole means that the stakes and monuments must be shown to
be official in their character and so identified that the tract of land
sought to be delimited by them, or by measurements from them, may
be correctly ascertained.

ID.—INSTRUCTION—FIELD-NOTES OF SURVEY—PRESUMPTION—BURDEN OF
PROOF.—An instruction explaining the method of running the lines

of a government survey, and stating that "when a government surveyor, in the field-notes returned by him to the government, shows that such section and quarter section corners are established on such straight lines between the township corners, and fixes their location by courses and distances, these field notes are to be accepted as presumptively correct, and can only be overcome by a preponderance of evidence that such surveyor actually established such corner monuments at points other than those indicated by the government fieldnotes," was correctly given.

ID.—RULE AS TO MONUMENTS, COURSES, AND DISTANCES.—The rule that fixed monuments shall control courses and distances only prevails when the boundaries are fixed and known, and monuments exist. When the boundaries are not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, then courses and distances as shown by the field-notes and maps of the original survey will be considered in fixing the boundaries. The survey as made in the field, and the lines actually run on the surface of the earth, must control. If monuments are known, they prevail; but if unknown, the presumption in favor of the correctness of the field-notes must prevail.

ID.—RULE AS TO FIXING STANDARD PARALLEL — PRESUMPTION AS TO DIRECTION.—A standard parallel, if established in part, is presumed to extend throughout in the same general direction, if not controlled by fixed monuments thereon.

APPEAL from a judgment of the Superior Court of San Diego County and from an order denying a new trial. N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

Cassius Carter, Hunsaker, Britt & Fleming, and Hunsaker & Britt, for Appellant.

W. J. Mossholder, C. F. Holland, H. R. Comly, Powers & Holland, and Marks P. Mossholder, for Respondents.

MELVIN, J.—This is an appeal from a judgment in favor of defendants and from an order denying plaintiff's motion for a new trial. The action was one in ejectment and presents some of the problems arising from the efforts to retrace the old surveys of the United States government in the Imperial Valley. While admittedly there was a conflict of evidence at the trial, appellant contends that in no material particular was his proof traversed and that the verdict was contrary to the evi-

dence.   He also complains of certain rulings on the admission
of evidence and in the instructions to the jury.

At the trial there was no contention that plaintiff was not
entitled to the north half of section 36 in township 16 south,
range 13 east, San Bernardino base and meridian which was
involved in the action; but defendants denied that any of

the land occupied by them was located in that half section. Plaintiff, depending upon the official surveys of Derby made in 1854 and Mathewson made in 1856, sought to re-establish the lines of the section 36 in question from the measurements tied to the monuments of the original surveys, which they asserted had been rediscovered by their witnesses. To illustrate appellant's position we reproduce a diagram made by one of the surveyors, Mr. Ward, who testified in his behalf.

It will be noticed that Ward's diagram shows three monuments on the west line of section 36 designated by him as "old corners." Appellant asserts that these three monuments which were mesquite stakes, were the original posts set by Mathewson in 1856 when he ran the section lines to conform to the township boundaries previously established by Derby. The most northerly of these stakes which, according to appellant, was set at the corner common to sections 25, 26, 35, and 36, was first shown to Mr. Ward in 1902. Subsequently it disappeared and in 1904 Mr. Ward set a white stake in its place. Later the mesquite stake was found in the possession of one Donovan; was procured by defendants; and was introduced in evidence by them at the trial. The other two stakes had been found by Mr. Ward by running south from the alleged corner stake, somewhat farther than the distances indicated in Mathewson's field-notes. Witness Ward stated that these stakes were practically in alignment, the deviation being but a matter of a few feet.

Witness Van Horn testified that he was present when Mr. Ward examined the stake which is alleged to have been at the northwest corner of section 36. The location of these stakes five hundred feet east of the Dahlia Canal was described at the trial by other witnesses who had been in that locality as early as 1901. Alverson, a surveyor, testified that in 1904 he ran south from the locality of the most northerly of these three stakes and found the other two. He gave it as his professional opinion that the most southerly of these stakes, marked "35" on one side and "36" on the other was set by Mathewson to mark the corners on the fourth standard parallel of sections 35 and 36.

But appellant contends that even if the three stakes near the Dahlia Canal be rejected, his right to the greater portion of the land occupied by defendants is established by reference

to other monuments. He asserts that his witnesses have discovered and identified the following monuments mentioned in Mathewson's field notes; a tree common to the corners of sections 10, 11, 14 and 15; a bearing tree south fifteen degrees west one hundred and seventy links from the corner common to sections 14, 15, 22 and 23; and a palo verde tree at a quarter-section corner between sections 33 and 34. According to the measurements of witness Caines the three stakes were 867 feet farther east of the palo verde tree than the two miles indicated in Mathewson's field-notes. Ignoring the stakes, this appellant urges, would move the western line of section thirty-six 867 feet west. As fixing the northern boundary of the section, appellant calls attention to the testimony of respondents' witness Henderson that he found the distance from the tree (claimed by appellant as being at the corner of sections 10, 11, 14, and 15) to a line running east to the white stake set by Mr. Ward to be 16,470 feet south—an excess of six hundred and thirty feet. Readjusting the lines according to these measurements and allowing nothing for errors in Mathewson's work, still, so appellant contends, the north half of section 36 would include more than two thirds of the lands of respondents. But it is earnestly contended that the distances between Mathewson's monuments were always greater than the field-notes indicated and that this discrepancy accounts for the excess found in measuring from the trees, claimed as monuments, to the stakes on the alleged western boundary of section 36. In measuring from the trees near the center of township 15 south, range 13 east, to the tree indicated by appellant as the corner of sections 10, 11, 14, and 15 in township 16, Messrs. Ward and Alverson found an excess of two hundred or three hundred feet in a mile not shown in Mathewson's field-notes. All of the surveyors who testified for plaintiff said that such excess existed. Witnesses for appellant testified to the finding of the original stake marking the corner of sections 15, 16, 21, and 22 of township 15 south, range 13 east. This they accomplished by running lines from the trees known as the "Imperial bearing trees," near the present city of Imperial and mentioned as appellant's witnesses assert in Mathewson's notes. Respondents' witness Mr. Henderson said, referring to these trees, that he would not accept them as bearing trees without other evidence than the markings which he

saw upon them.   Mr. Bates also testified that he would consider it questionable if these trees were what appellant's theory would make them.   Mr. Butler, another surveyor, was similarly in doubt.   But appellant's counsel argue that mere doubts are of no value when opposed to the positive testimony of their witnesses with reference to the location and markings of the alleged monuments.   Appellant's counsel call our attention to the relation between the "bearing trees" in township 15 and the palo verde tree at the quarter-section corner on the line between sections 33 and 34 in township 16.   The evidence, they say, establishes these bearing trees and the palo verde tree almost in the same line north and south although they are nine miles apart, and this correspondence in alignment, they argue, can hardly be merely accidental.   Counsel warn us against giving great weight to the failure of their witnesses to find the watercourses corresponding with any degree of accuracy to those mentioned and described by Mathewson in his field-notes, as there have been numerous overflows and floods in the valley during the half century since the government surveys were made.   We have thus followed carefully the arguments of appellant's counsel based upon the essential matters of proof, in order that we might fully test the assertion that there was no material impeachment of the evidence adduced by them and that the verdict against plaintiff was clearly contrary to the evidence.   Let us now examine the evidence offered on behalf of respondents.

The first criticism of respondents is directed to the great excess of measurements over the calls of the field-notes which must be made in order to tie the alleged fixed monuments to the stakes on the purported east line of section 36 in township 16.   Commencing their survey at the two trees near Imperial, designated by them as the bearing trees marking the corner common to sections 15, 16, 21, and 22 in township 15, these surveyors found the purported section 36, to use the phrase of respondents' counsel, "more than a half mile too far south and nearly a mile and a quarter too far east to be identified as plaintiff's land."   Upon this point Mr. Alverson, one of the witnesses for plaintiff, testified as follows:   "We found that instead of counting two miles from the corner common to 15, 16, 21, and 22, running two miles east in order to bring us exactly north of the southwest corner of section 36, we had to

run an additional 1122 feet; in other words, before we got directly north of the southwest corner of 36, as shown on this diagram (exhibit 'G'), in running from the old corner common to sections 15, 16, 21 and 22, township 15 south, we had to run two miles and 1128 feet.  We assume that those monuments found, were corners, no matter what the excess.  The southwest corner of section 36 is 2876 feet in excess of the nine miles called for from the Imperial bearing trees in township 15.  The excess called for in the field-notes is 228 feet.  The excess not called for in the field-notes is 2648 feet.  There is practically a half-mile excess in measuring from this northerly corner to the southerly line in this township 16 and practically 1128 feet excess in the easterly."

Next our attention is called to the fact that the jurors saw the northerly stake which was found on the supposed western line of section 36 and were the best judges of its genuineness or spuriousness as one of the markings of the original survey. We are also reminded that witness Van Horn swore that he saw no stakes when visiting that immediate locality in 1901. Another evidence of the falsity of appellant's conclusions with reference to the three stakes, according to respondents' counsel, is the fact that Mathewson described the land on the west boundary of section 36 as perfectly level, while the land along the line of the stakes was said by witnesses at the trial to be rough and full of hummocks.  The field-notes describe the north line of section 36 as level, while the north line of that section as plaintiff claims its location crosses an arroyo which has evidently been many years in existence because it contains good-sized trees, one of the largest being about sixteen inches in diameter.  All these circumstances tend to prove, say respondents' counsel, that appellant's surveyors were mistaken in their efforts to locate section 36.

The jury was also given an opportunity to note the intersection with the north boundary line of township 15 of a line run due north from the so-called "Imperial bearing trees." This intersection is at a point 403 feet west of the old channel of New River, whereas a line drawn from the corner common to sections 15, 16, 21, and 22 as shown on the official map would meet the north boundary line of the township at a point more than a mile and a half west of New River.  Respondents' criticism is also leveled at the markings on the bearing trees

which it is claimed were too distinct and fresh to have existed more than half a century. Respondents called Mr. Henderson, the surveyor, who under contract and with written instructions from the government of the United States made a survey of the exterior boundaries of these townships in Imperial Valley. In doing this work he was required to fix the fourth standard parallel. According to his testimony, the fourth standard parallel which forms the southern line of section 36 passes to the north of some of the property in question and his location of this line would place all of the land of the defendants outside of the north half of section 36, township 16. Although certain testimony of Henderson with reference to alleged stone monuments was stricken out, one means whereby he assured himself that he was on the fourth standard parallel was an observation on Signal Mountain agreeing with that of Derby taken from section corners 3 and 4, range 12 east, township 17 south. He also testified that he ran north to the third standard parallel and found it. From the foregoing discussion it will be seen that there was a substantial conflict of evidence both as to the authenticity of alleged monuments and the courses and distances. So sharp has been this conflict that we cannot say there was no material contradiction of plaintiff's evidence. There was testimony ample, if believed, to justify the jurors in finding in favor of the defendants and the court in denying the motion for a new trial.

Appellant assigns as error the court's refusal to admit in evidence a certain stake found by witness Alverson many miles away from the land in dispute. It was with a number of other stakes and its relevancy, if it be relevant at all, would depend upon the fact that it was found in territory originally surveyed by Derby and Mathewson. There was nothing of greater authenticity respecting its origin than there was with reference to the stakes found near the land claimed by plaintiff. We cannot see how its introduction in evidence could have assisted the jury. Clearly the ruling rejecting it was correct.

The court permitted defendants to introduce the diagram drawn by witness Henderson to illustrate his testimony and appellant assigns this as error upon the theory that it tended to confuse the jury and was not founded upon any monuments. The court was careful, however, to explain to the jury that the drawing was merely admitted in evidence "for illus-

trating the witness's testimony so far as it was applicable, not as evidence any further than illustrating the testimony of the witness." In the instructions the jury was again warned that the diagrams were not to be considered "any evidence at all of the location on the ground of the boundaries of said section or of said fourth standard parallel south."

Nor was there error in the court's instruction that defendants had reclaimed the land occupied by them, tilled the soil, etc. Most of the facts regarding the improvements and tilling of the soil were brought out by plaintiff's counsel in establishing the rental value of the land. This part of the instructions, therefore, could have done no harm even if it were erroneous; but as it was merely a recital of the manner of the possession by defendants of the property, followed by a statement of their claim that the land so occupied by them is not in section 36, we can see that it has a logical place in the court's directions to the jury. The court was careful to limit the effect of this instruction, for the jury was told that "plaintiff's suit cannot be defeated by a showing that the defendants placed improvements upon the land or any part of it."

Objection is made to an instruction which was as follows:—

"If you find from the evidence that stakes or monuments have been found which are claimed by plaintiff to indicate and fix the location of the boundaries of the land in question, or of sectional or quarter corners of the original official government survey of said land, or of land in the vicinity, or surrounding territory, then you are instructed that the burden is upon the plaintiff to show by a preponderance of evidence, that such stakes or monuments are those of the original, official government survey, and also, that such original stakes or monuments establish and locate particular and designated boundaries, section or quarter corner of such original survey; and unless such stakes or monuments are of such official and designated character as above specified, and shown to be such by a preponderance of evidence, then they should be disregarded by you as evidence of the boundaries of the land in question, or of section or quarter corners of said official government survey."

This instruction in effect admonished the jury that, unless the supposed monuments were what they purported to be, they must be disregarded. Perhaps the words "establish and locate," taken in their strongest sense, might seem to impose, as

appellant says, too great a burden upon the stakes and monuments, because the stakes and monuments are to be considered in connection with their relation to one another and to natural objects described in the field-notes. Read as a whole, the instruction clearly means that the stakes and monuments must be shown to be official in their character and so identified that the tract of land sought to be delimited by them or by measurements from them may be correctly ascertained.

The court gave as an instruction a part of section 2395 of the United States Revised Statutes, as follows:—

"The public lands shall be divided by north and south lines run according to the true meridian, and by others crossing them at right angles, so as to form townships of six miles square, unless where the lines of an Indian reservation, or of tracts of land heretofore surveyed or patented, or the courses of navigable rivers, may render this impracticable; and in that case this rule must be departed from no further than such particular circumstances require."

This instruction would not have a tendency to impress the jury, as appellant seems to fear, with the idea that this particular township was six miles square. It is simply explanatory of the method of running surveyors' lines and makes clearer the rest of the instruction, which is as follows:—

"Therefore, when a government surveyor, in the field-notes returned by him to the government, shows that such section and quarter-section corners are established on such straight lines between the township corners, and fixes their locations by courses and distances, these field-notes are to be accepted as presumptively correct, and can only be overcome by a preponderance of evidence that such surveyor actually established such corner monuments at points other than those indicated by the government field-notes. The rule that fixed monuments shall control courses and distances only prevails when the boundaries are fixed and known, and monuments exist. And where the boundaries are not fixed and known, and the location of the monuments themselves is uncertain, or left in doubt by the evidence, then courses and distances as shown by field-notes and maps of the original survey will be considered in fixing the boundaries."

This is merely another way of saying: "The survey as made in the field and the lines actually run on the surface of the

earth . . . must control." (*Kaiser* v. *Dalto*, 140 Cal. 172, [73 Pac. 830].) When the monuments are known of course they prevail: "When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount." (Code Civ. Proc., sec. 2077, subd. 2.) But when the monuments themselves are unknown the presumption in favor of the correctness of the field-notes must prevail.

The instruction to the effect that the fourth standard parallel if established in part must be deemed to extend in the same general direction unless diverted by some fixed monument would be above criticism if the instruction did not contain the .following language: "and if you further find from the evidence that two or more visible, permanent, identified, and undisputed stakes or monuments of the survey of said line have been found on said standard line, and which indicate and fix the location, course, and direction thereof." Doubtless the court overlooked the fact that the testimony of Mr. Henderson with reference to monuments on this line claimed by him to be the fourth standard parallel had been stricken out. However, there was evidence that Henderson fixed this line by reference to natural monuments such as Signal Mountain and certain points on New River; and respondents maintain that the language with reference to stakes or monuments that might have been found on the standard line is immaterial. The jury of course knew that all testimony with reference to monuments on this line had gone out, but the gist of the instruction was not the effect of monuments on the line, but the rule that such a line once established in part is presumed to extend in the same general direction. The error therefore was harmless.

No other alleged errors require particular notice.

The judgment and order are affirmed.

Lorigan, J., and Henshaw, J., concurred.

Hearing in Bank denied.